IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| PAUL RENFRO HARBISON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv297 |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |
| *ex rel* KENNETH T. CUCCINELLI, II, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the following motions:

(1) The motion to dismiss the Complaint by the Commonwealth of Virginia *ex rel* Kenneth T. Cuccinelli, II (referred to herein as the "Commonwealth") (Docket No. 3);

(2) The motion to dismiss the Complaint by John C. Bowers, Warner Chapman, Bradley Finch, Wade Kizer, Matthew B. Lowrey, Edith M. Min, William Neely, Larry K. Prichett, and Deborah Williams (referred to herein, collectively, as the "Commonwealth Defendants") (Docket No. 9);

(3) The motion to dismiss the Complaint by the Honorable Judges Joseph Ellis, David Beck, Robert Humphreys, Cleo Powell, and Jean Clements (referred to herein, collectively, as the "Judicial Defendants") (Docket No. 15);

(4) The motion of Junko Harbison, Makoto Ezure, and Megumi Ezure to strike Plaintiff's request for entry of default, and to set aside the Clerk's entry of default (Docket No. 19);

(5) The motion to dismiss the Complaint by Junko Harbison, Makoto Ezure, and Megumi Ezure (Docket No. 22); and

(6) The Plaintiff's requests for a hearing on all of the motions (Docket Nos. 26 and 32).

For the reasons set forth herein, it is the Court's recommendation that the Defendants' motions to dismiss and motion to set aside the Clerk's entry of default be GRANTED. Because the Court concludes that oral argument would not aid in the decisional process, the Court recommends that Plaintiff's requests for a hearing be DENIED.

## I. FACTUAL BACKGROUND

This case arises out of a divorce proceeding in the Spotsylvania Circuit Court between the Plaintiff, Paul Harbison, and Junko Harbison.[1] According to a "Report and Certificate of Marriage" issued by the United States Embassy in Seoul, Korea, Plaintiff was married to Junko Harbison in November of 2002. (Compl., Exhibit A.) Junko Harbison filed for divorce in the Spotsylvania Circuit Court on October 5, 2007. (Id., Exhibit G at 17.) On February 24, 2008, after the divorce proceeding had been initiated, Plaintiff was charged with the criminal offense of "stalking" Junko Harbison.[2] (Id. ¶ 66 (improperly numbered as ¶ 63).)

In the course of the divorce proceeding, Plaintiff informed the court that he had been married to another woman when he allegedly married Junko Harbison. (Id., Exhibit G at 17.) The Court thereafter held, by decree entered January 7, 2009, that the marriage of Plaintiff and Junko Harbison was void *ab initio*, pursuant to Virginia Code §20-38.1(a)(1) and 20-43. (Id., Exhibit G at 8-9.) Plaintiff appealed the Circuit Court's decision on multiple grounds, alleging

---

[1] Junko Harbison is also referred to by the Plaintiff as Junko Ezure, her maiden name.

[2] Prior to the initiation of the divorce proceeding, Plaintiff had also been arrested for assault of Junko Harbison's children (Makoto and Megumi Ezure), and bank fraud. (Compl. n.14 at 33).

2

that the Circuit Court improperly admitted into evidence the "Report and Certificate of Marriage," and improperly denied various motions to unseal certain documents pertaining to Junko Harbison's immigration status. (Id., Exhibit G at 16.) The Court of Appeals of Virginia summarily affirmed the Circuit Court's decision by unpublished opinion, issued on January 12, 2010. (Id., Exhibit G at 16-22.)

In October 2008, after the divorce proceeding had begun, but before the Circuit Court had declared the marriage void, Plaintiff was indicted by a state grand jury on charges of bigamy and unlawful marriage. (Id., Exhibit B.) The charges were subsequently *nolle prosequied* on the motion of the Assistant Attorney for the Commonwealth in January 2009. (Id., Exhibit G at 10-11.) Plaintiff filed a Petition for Writ of Mandamus to the Supreme Court of Virginia, which was refused by Order of May 27, 2010. (Compl. ¶ 55 (improperly numbered as ¶ 52 at 30).)

Plaintiff filed this action on May 5, 2010, seeking monetary relief in the amount of $300,000,000.00, injunctive relief, and declaratory relief from the Commonwealth of Virginia, Junko Harbison, her two children, and numerous state actors, including various judges who had been involved in various stages of the related proceedings and employees of the Commonwealth Attorney, Treasurer, and Commissioner of Revenue, each in their official capacity. The thrust of the fifty-six page, fourteen count complaint appears to allege various due process and equal protection violations committed against the Plaintiff throughout his divorce and criminal proceedings in state court. The alleged violations are based on the final orders, discovery orders, and an order for sanctions in those proceedings. Plaintiff expressly alleges violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Amendments of the United States Constitution, as well as various treaties between the United States and Japan and Korea. The

Defendants seek dismissal, pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

A motion made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's jurisdiction over the subject matter of the plaintiff's complaint. When the court's subject matter jurisdiction is challenged, the plaintiff bears the burden of proof. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When ruling on a 12(b)(1) motion, the Court considers the pleadings, and it may also consider evidence outside of the pleadings without necessarily converting the motion to one for summary judgment. Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768). The moving party will prevail as a matter of law if material jurisdictional issues are not in dispute and support the requested relief. Id.

## III. ANALYSIS

**A.     The Commonwealth of Virginia**

Plaintiff sues the Commonwealth of Virginia for $300,000,000.00 in monetary damages and various forms of equitable relief. (Compl. ¶ 91 (improperly numbered as ¶ 88 at 46); 110 (improperly numbered as ¶ 107 at 54-55).) The Commonwealth seeks dismissal of such claims pursuant to Rule 12(b)(1) on the basis that they are barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

4

United States by citizens of another state or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Supreme Court has interpreted the sovereign immunity conferred by the Eleventh Amendment to extend beyond the Amendment's literal terms. Thus, an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. See Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (citations omitted); Edelman v. Jordan, 415 U.S. 651, 663 (1974). There are two ways by which a state's Eleventh Amendment immunity may be overcome: (1) Congress may explicitly legislate to abrogate this immunity; and (2) the state may voluntarily waive its immunity. McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987). Neither is applicable here. The Commonwealth is entitled to Eleventh Amendment immunity. The Court, accordingly, recommends the dismissal of Plaintiff's claims against the Commonwealth pursuant to Rule 12(b)(1).

**B.     The Commonwealth Defendants**

The allegations against the Commonwealth Defendants, construed liberally in favor of the *pro se* Plaintiff, appear to be based primarily upon a theory of malicious prosecution of the Plaintiff by the local Commonwealth Attorney. The claim would pertain only to Commonwealth Defendants John C. Bowers, Warner Chapman, Bradley Finch, Wade Kizer, Matthew B. Lowrey, Edith M. Min, and William Neely, who are employed by the Commonwealth Attorney, but not Larry K. Prichett or Deborah Williams, who are the Treasurer of Spotsylvania County and the Spotsylvania County Commissioner of Revenue, respectively. Plaintiff alleges, "[t]his Complaint exists today for the unlawful molestation and false criminal indictments and charges, civil orders and decrees initiated by Defendants that were criminally nolle prosequied based on its own burden of venue. . . ."; and "[t]he Defendants, specifically the prosecutors knew [June

5

25, 2007 or earlier] that no intimate relationship, cohabitation, or marriage with any assent existed between the parties prior to the Defendant's 'Divorce' action and subsequent false indictments." (Compl. ¶¶ 9, 17 (improperly numbered as ¶ 2 at 12-13).)

Plaintiff also accuses the Commonwealth Defendants of "criminally aid[ing] and abett[ing] kidnaping by fraudulent marriage to profit, provid[ing] state-sponsored polygamy, evasion of banking and financial transactions, taxes, illegal educational benefits, mortgage and immigration fraud while denying Mr. Harbison or the public any evidence, testimony, consent, or confrontation." (Id. at ¶ 18 (improperly numbered as ¶ 3 at 13).) He bases this claim on what he calls his "fundamental right . . . not to be married" and his fundamental right . . . not to be married in Virginia to someone of a different race." (Id. at ¶¶ 94 (improperly numbered as ¶ 91 at 46-47), 95 (improperly numbered as ¶ 92 at 47).)

The nature of Plaintiff's claims against Commonwealth Defendants Larry K. Prichett (Treasurer of Spotsylvania County) and Deborah Williams (Spotsylvania County Commissioner of Revenue) is unclear. Plaintiff does not specify any conduct of Prichett or Williams that caused him injury, or the injury he suffered as a result thereof. The Commonwealth Defendants collectively move for dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

    **1.    Claims for Monetary Damages**

Plaintiff sues each of the Commonwealth Defendants in their official capacity, seeking monetary relief in the amount of $300,000.00 "per Virginia employee or elected official per count." (Compl. ¶ 91 (improperly numbered as ¶ 88 at 46).) The Commonwealth Defendants seek dismissal of such claims for monetary relief pursuant to Rule 12(b)(1) on the basis that such

claims are also barred by the Eleventh Amendment of the United States Constitution, as they are as against the Commonwealth.

Eleventh Amendment immunity has been extended to state officials who are sued for monetary relief in their official capacity because such actions are simply a variation of alleging a cause of action against the state itself. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ."). The Commonwealth Defendants, however, will be entitled to immunity only if they are considered to be "arms" of the state, as opposed to a local government. See McConnell, 829 F.2d at 1326.

The Fourth Circuit has held that an officer is an arm or agent of the state, and thus entitled to Eleventh Amendment immunity, if the "policies, responsibilities, and concerns of the officer bear a closer nexus to the state than to a local government entity." McConnell, 829 F.2d at 1327. Courts consider a number of factors in determining whether an officer is an agent of the state:

> [1] [W]hether and to what extent any judgment will be payable from the state treasury; [2] the extent of funding provided to the institution by the state; [3] the extent of the state's control in appointing the governing body of the institution; [4] the degree of the institution's autonomy over its operations; [5] whether the institution is separately incorporated; [6] whether it has the power to sue and be sued and to enter into contracts; [7] whether its property is immune from state taxation; and [8] whether the institution's function is governmental or proprietary.

McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 892 (E.D. Va. 1992).

As noted earlier, Commonwealth Defendants John C. Bowers, Warner Chapman, Bradley Finch, Wade Kizer, Matthew B. Lowrey, Edith M. Min, and William Neely are affiliated with

various offices of the Commonwealth Attorney; Larry K. Prichett is the Treasurer of Spotsylvania County; and Deborah Williams is the Spotsylvania County Commissioner of Revenue. The Virginia Constitution identifies five state officers. Among those five positions are the office of the Commonwealth's Attorney, Treasurer, and Commissioner of Revenue. Va. Const. art. VII, § 4; Blankenship, 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996). The responsibilities and salaries for each of the Constitutional Officers are governed by state law. See Va. Const. art. VII, § 4 ("The duties and compensation of such officers shall be prescribed by general law or special act."); Va. Code §§ 15.2-1600-15.2-1607 (pertaining to Constitutional Officers, generally); §§ 15.2-1608-15.2-1608.2 (pertaining to the Treasurer); §§ 15.2-1626-15.2-1633 (pertaining to the Commonwealth Attorney); § 15.2-1636 (pertaining to the Commissioner of Revenue). Any judgment obtained by the Plaintiff against any of those officers would most likely be satisfied by the Virginia Department of the Treasury Risk Management Insurance Plan. See Va. Code § 2.2-1837; Blankenship, 918 F. Supp. at 974. Most importantly, however, the Commonwealth's Attorney, Treasurer, and Commissioner of Revenue are "charged with performing quintessential functions of state government." Blankenship, 918 F. Supp. at 974 n.4. Thus, the officers are more closely related to the state than to their local entities, and each are state officials entitled to Eleventh Amendment immunity. The Court, accordingly, recommends that Plaintiff's claims for monetary relief alleged against the Commonwealth Defendants be dismissed pursuant to Rule 12(b)(1).

  **2.**  **Claims for Equitable Remedies**

In addition to monetary relief, Plaintiff seeks various forms of equitable relief from all Defendants, without specifying what relief is sought from which defendant. Specifically,

Plaintiff requests that the Court nullify numerous orders and decrees entered by the Virginia Courts; order the production of discovery requested by Plaintiff while proceeding in State Court and denied by the State Court; order the return of personal property taken by Junko Harbison when she ceased her residence with Plaintiff; award reimbursement in the amount of $15,759.00, which is the amount that Plaintiff was ordered by the State Court to pay in attorneys' fees in the underlying divorce proceeding; void all "mortgage loans, educational, financial, tax (if any), property titles and taxes, driver's license, and employment and any other official records in the name of Junko Harbison, Makoto and Megumi Ezure"; require Junko, Makoto, and Megumi Ezure to surrender their Social Security Cards and Permanent Resident Cards to either Plaintiff, or to the Court, for submission to the Social Security Administration and the Department of Homeland Security; require that Junko Ezure immediately stop using the name of Junko Harbison; notify the U.S. Attorney of the allegedly illegal immigration status of Junko, Makoto, and Megumi Ezure; and reopen the underlying domestic cases involving the Plaintiff, Junko Harbison, and Makoto and Megumi Ezure. (Compl. ¶ 110 (improperly numbered as ¶ 107 at 54-55).)

None of the equitable relief requested against all of the Defendants appears to be related to the claims against the Commonwealth Defendants. The Court construes the Complaint as requesting no equitable relief from the Commonwealth Defendants. Inasmuch as the only relief sought from the Commonwealth Defendants is monetary and barred by the Eleventh Amendment, the Court recommends a finding that Plaintiff's claims against the Commonwealth Defendants be dismissed in their entirety pursuant to Rule 12(b)(1).

### C. The Judicial Defendants

The factual allegations that pertain to the Judicial Defendants amount to little more than a recitation of perceived errors occurring in the Circuit Court and Court of Appeals proceedings. For example, Plaintiff challenges the Circuit Court's reliance on the "Report and Certificate of Marriage" as improper evidence of the existence of a marriage; he avers that the Circuit Court improperly exercised jurisdiction over him while he was "employed as a civilian component in Japan under US-Japan SOFA status having never been a Virginia resident"; he asserts that he "has never been married or divorced in Virginia to any Japanese citizen and demands strict proof thereof"; and that he has "never voluntarily practiced polygamy or had a polygamous relationship anywhere and demands strict proof thereof." (Compl. ¶¶ 1, 3, 10, 15, 16 (improperly numbered as ¶ 1 at 12).) The Judicial Defendants seek the dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(1) on the basis that they are absolutely immune from Plaintiff's suit pursuant to the doctrine of judicial immunity.

The doctrine of judicial immunity is firmly established. "As early as 1872, the [Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Stump v. Sparkman, 435 U.S. 349, 359-60 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1872)). Thus, the Court has held that judges "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Id.

Judicial Officers do not have absolute immunity from liability in civil suits only under two circumstances.  First, a judge may not invoke absolute judicial immunity "for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity." Mireles v. Waco, 502 U.S. 9, 11 (citing Forrester v. White, 484 U.S. 219, 227-29 (1988)).  Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12 (citing Stump, 435 U.S. at 356-57; Bradley, 80 U.S. at 351).

To determine whether an act is "judicial," the correct inquiry concerns "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.  For example, although a judge's direction to police officers to execute a judicial order using excessive force is not a "function normally performed by a judge," that act may retain its "judicial" character where the judge was still acting in his official capacity as a judicial officer when he instructed the police to use excessive force, and gave the instruction in an effort to carry out a judicial order. See Mireles, 502 U.S. at 12.  Thus, a judge continues to be protected from liability by absolute immunity, even if the judicial act performed exceeded the scope of the judicial authority.

To determine whether a judge is deprived of absolute immunity based on a lack of jurisdiction, the Court must draw a distinction between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter." Stump, 435 U.S. at 356 n.6 (quoting Bradley, 80 U.S. at 351-52).  Where jurisdiction over the subject matter is completely lacking, "any authority exercised is a usurped authority." Id.  At the same time, where the law does confer jurisdiction in the subject matter, "the manner and extent in which the jurisdiction shall be

11

exercised are generally questions for [the judge's] determination as any other questions involved in the case." Id. Thus, if a probate judge were to preside in a criminal matter, he would be acting in the complete absence of jurisdiction, since probate judges are without such jurisdictional authority. Id. at 357 n.7 (citing Bradley, 80 U.S. at 352). In contrast, a judicial officer presiding in a criminal court who convicts a defendant of a non-existent crime would nevertheless "merely be acting in excess of his jurisdiction and would be immune." Id.

Here, the conduct that forms the basis of Plaintiff's allegations against the Judicial Defendants was "judicial" in nature. As earlier noted, Plaintiff challenges the Circuit Court's reliance on the "Report and Certificate of Marriage" as improper evidence of the existence of a marriage; he avers that the Circuit Court improperly exercised jurisdiction over him while he was "employed as a civilian component in Japan under US-Japan SOFA status having never been a Virginia resident"; he asserts that he "has never been married or divorced in Virginia to any Japanese citizen and demands strict proof thereof"; and that he has "never voluntarily practiced polygamy or had a polygamous relationship anywhere and demand s strict proof thereof." (Compl. ¶¶ 1, 3, 10, 15, 16 (improperly numbered as ¶ 1 at 12).) All of these acts (the consideration of evidence, the determination of the court's jurisdiction, and the judicial decision-making process) are functions normally performed by a judge and were within the expectations of the parties in the underlying cases. Thus, they are "judicial acts," within the scope of absolute immunity.

Plaintiff also argues that the Judicial Defendants are not immune because they were acting in absence of any jurisdiction throughout the relevant period. Plaintiff's argument that the Judicial Defendants lacked subject matter jurisdiction is apparently premised on the notion that,

12

because the marriage that the Spotsylvania County Circuit Court held to be void *ab initio* took place in Korea, as opposed to Virginia, only Korean courts can adjudicate matters relating to the marriage. Virginia Code § 20-96 provides Virginia Circuit Courts with jurisdiction over divorce actions. Virginia Code § 20-97 further requires that one of the parties to a divorce action have been a bona fide resident and domiciliary of the Commonwealth for at least six months preceding the commencement of the suit. Although the marriage of the Plaintiff to Junko Harbison was alleged to have begun in Korea, the Virginia Circuit Court has jurisdiction to declare that marriage void if either Plaintiff or Ms. Harbison resided in Virginia for six months prior to the date on which Ms. Harbison filed for a divorce. In fact, it is uncontroverted that Plaintiff has been a resident and domiciliary of Virginia since April 2, 2004. (Compl. ¶ 10.) The divorce proceedings were initiated in October 2007. (Id., Exhibit G at 17.) Thus, the Spotsylvania Count Circuit Court had jurisdiction to conduct the underlying divorce proceeding. The Judicial Defendants, accordingly, were not acting in a clear absence of all jurisdiction, and they are entitled to absolute immunity from suit.

Additionally, Plaintiff argues that Judicial Defendants lacked jurisdiction because they "failed to follow" the limitations on jurisdiction articulated in Article III of the United States Constitution. Article III concerns the jurisdiction of Federal Courts and is not applicable to the State Courts over which the Judicial Defendants preside.

Plaintiff further argues that the Judicial Defendants are not entitled to absolute judicial immunity because, according to Plaintiff, "[n]o Court of Appeals ever has concluded that immunity bars injunctive relief against a judge." It is true that judicial immunity is not a bar to prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 541-42 (1984). However, the

relief sought by Plaintiff is not prospective in nature, so the exception does not salvage his claims against the Judicial Defendants from dismissal based upon their absolute immunity.

Accordingly, because the Judicial Defendants performed the contested acts while operating in their judicial capacity, and because the Judicial Defendants had subject matter jurisdiction when they performed such acts, the Court recommends a finding that all of Plaintiff's claims against them be dismissed pursuant to Rule 12(b)(1).

**D.      Junko Ezure, Makoto Ezure, and Megumi Ezure**

With regard to Junko Harbison and her two children, Plaintiff alleges that Ms. Harbison has violated various laws of Japan and Korea, including kidnaping for marriage, adultery, and fraud. (Compl. ¶¶ 11, 12, 31 (improperly numbered as ¶ 28).) He further asserts that Junko Harbison and her children are present in the United States illegally and requests that they be deported. (Id. ¶ 18 (improperly numbered as ¶ 3 at 13).)

On June 16, 2010, Plaintiff requested entry of default against Junko Harbison and Makoto and Megumi Ezure. (Docket No. 11). The Clerk entered default on June 22, 2010. (Docket No. 14). On the same day, Junko Harbison and Makoto and Megumi Ezure made a special appearance by counsel to contest the validity of service of process upon them. They filed a Motion to strike Plaintiff's request for entry of default and to set aside the Clerk's entry of default. (Docket No. 19). The following day, they moved to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6).

**1.      Motion to Strike Plaintiff's Request for Entry of Default and to Set Aside Clerk's Entry of Default**

Junko Harbison and Makoto and Megumi Ezure move to have the entry of default set aside on the basis that none of them have been properly served with process. The Summonses

14

for Junko Harbison and each of her children reflect that service was effected for each of them on one "Stephanie Tucker, who is designated by law to accept service of process on behalf of . . . Kimberly A. Skiba of Owen & Owens on (date) 5/18/10." (Docket No. 6). Ms. Skiba has represented Junko Harbison on other matters, but she is not her counsel of record in this action.

Rule 55(c) of the Federal Rules of Civil Procedure provides that a court may set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c). It is well established that Rule 55(c) should be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)). The Fourth Circuit has articulated six factors that should be considered in deciding whether to set aside an entry of default:

> [A] district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006) (citing Lolatchy, 816 F.2d at 953)). "If a court lacks jurisdiction over the parties because of insufficient service of process, the [default] judgment is void and the district court must set it aside." Carimi v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1345 (5th Cir. 1992). See Scott v. District of Columbia, 598 F. Sup. 2d 30, 36 (D.D.C. 2009) ("Default cannot be entered where there was insufficient service of process."). See also Federal Practice & Procedure § 2682 ("Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process.").

15

Proper service of process upon an individual may be effected by either: (1) delivering it to the individual personally; (2) leaving it at the individual's dwelling or ususal place of abode with someone of suitable age and discretion who lives there; (3) delivering it to an agent authorized by law or appointment to receive service of process; or (4) complying with state law procedures for service of process. Fed. R. Civ. P. 4(e)(1), (2). Virginia law provides that process may be served on a natural person by delivering a copy thereof to the party in person, delivering it to a member of the defendant's family at the defendant's usual place of abode, posting a copy on the front door of the defendant's usual place of abode, or through an order of publication if service cannot be otherwise accomplished. Va. Code § 8.01-296.

Plaintiff attempted to accomplish service upon Junko Harbison and her children by service upon an agent; namely, an employee of an attorney who represented them in other matters. Numerous Federal Courts have held that "[t]he mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service." Davies v. Jobs & Adverts Online, Gmbh, 94 F. Supp. 2d 719, 722 (E.D. Va. 2000) (citing United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997); Grandbouche v. Lovell, 913 F.2d 835, 837 (10th Cir. 1990)); Ransom v. Brennan, 437 F.2d 513, 518-519 (5th Cir. 1971) (service of process is not effectual on an attorney solely by reason of his capacity as an attorney). "Rather, the party seeking to establish the agency relationship must show 'that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service.'" Davies, 94 F. Supp. 2d at 722 (quoting Ziegler, 111 F.3d at 881)). There is no evidence that Stephanie Tucker or Kimberly Skiba had been authorized by the Defendants, or by law, to receive service of process on the Defendants' behalf, and the Defendants affirmatively confirm that Ms. Tucker

16

and Ms. Skiba have not been so authorized. Thus, Plaintiff's service of process upon them was ineffective.

Plaintiff also asserts that he accomplished sufficient service in accordance with Virginia Code § 8.01-301(1). That portion of the Virginia Code, however, concerns service on foreign corporations, not natural persons. Junko Harbison and Makoto and Megumi Ezure have been sued as individuals, not as a corporation. Thus, Virginia Code § 8.01-301(1) is inapplicable.

Because the Defendants were not properly served, the Clerk's entry of default must be set aside. The Defendants acted with reasonable promptness in asserting the defense by raising it in their initial pleading in the matter. Therefore, the defense has not been waived. Furthermore, the entry of default was not the result of any dilatory conduct on the part of the Defendants; nor has there been a history of dilatory conduct by them in this action. Moreover, setting aside the entry of default will not result in undue prejudice to the Plaintiff where he could have still pursued his claims if they had merit. The Court, accordingly, recommends that the motion to set aside the Clerk's entry of default be granted.

### 2. Motion to Dismiss

Junko Harbison and Makoto and Megumi Ezure move for dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(5) for insufficient service of process. The Court, having already found that service upon them was insufficient and that they did not waive the defense, the Court further recommends that their motion to dismiss be granted on this basis.

### IV. CONCLUSION

For the reasons discussed herein, it is the recommendation of this Court that the Defendants' motions to dismiss (Docket Nos. 3, 9, 15, 22) be GRANTED; that the motion to set

aside the Clerk's entry of default (Docket No. 19) be GRANTED; and that the Plaintiff's motions for a hearing (Docket Nos. 26, 32) be DENIED as MOOT.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne, to the *pro se* Plaintiff at his address of record, and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: August 11, 2010